IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | |
| v.   ) | Case No. 7:10CR00011 |
| ) | |
| KEVIN NEVOYLE DICKERSON,   ) | |
| ) | |
| Defendant.   ) | |

SENTENCING MEMORANDUM

COMES NOW the defendant, Kevin Nevoyle Dickerson, by counsel, and respectfully urges this Court to impose two concurrent sentences of 10 years, the mandatory minimum sentence for Count 1 (and twice the mandatory minimum for Count 8). Consideration of the relevant factors in 18 U.S.C. § 3553(a) supports a finding that 10 years is more than sufficient to comply with the purposes of punishment, and Cogress mandates that "The court *shall* impose a sentence sufficient, *but not greater than necessary* to comply" with those purposes. Id. (emphasis added).

Nature and Circumstances of the Offense

Dickerson has pled guilty to conspiracy to possess with intent to distribute more than 1000 grams of heroin and attempt to possess more than 100 grams of heroin, admittedly serious offenses. On December 4, 2009, police in Roanoke received information from New Jersey law enforcement officers that they had a CI making a delivery of 150 bricks[1] of heroin to someone in Roanoke at the Valley View Mall Shakers Restaurant that evening. Based on the information, police staked out the restaurant and saw Dickerson, who matched the description of the person

---

[1] A brick is 50 single-dose bags of heroin. Each bag contains .02 - .03 grams of heroin. Using the high-end of that range, a brick would have 1.5 grams of heroin, and 150 bricks would be 225 grams.

who was to receive the heroin. When police approached Dickerson, he identified himself and consented to search of his car, in which they found $30,000 and 63 cartons of cigarettes, which he admitted were his, not his passengers'. He then voluntarily agreed to speak with the police at his home, which he also allowed them to search.

Dickerson admitted that he was planning to buy 150 bricks of heroin in exchange for the $30,000 and cigarettes. He explained that he had a connection in New Jersey, named Anna, who purchased the heroin in New York and then sold it to him. His information was consistent with the information provided by the New Jersey authorities. Dickerson further admitted that he had been involved in distributing this heroin for a little over one year, getting the heroin monthly for another person, Broady (his only customer), until Broady was arrested in February 2009. Some time after Broady's arrest, Dickerson began supplying the heroin to co-defendant Matthew White (formerly Broady's client) for 3 to 6 months. White was already the subject of an ongoing federal investigation regarding his drug dealing activities.

Not only was Dickerson cooperative, honest, and forthcoming about his involvement in these offenses, *he voluntarily testified at the grand jury* less than a week later, even knowing that he was a target of the investigation. Because White had not implicated Dickerson as his supplier at that time, Dickerson's honest admissions and testimony are the primary proof of his involvement in the charged conspiracy in this case, an offense carrying greater penalties than the offense he had been caught attempting. In spite of knowing the seriousness of the situation into which he had gotten himself, he continued to be honest and cooperative.[2]

---

[2]Ironically, had Dickerson not provided the necessary information to inculpate him in the conspiracy, the sentencing guideline range for attempted possession with intent to distribute, as charged in count 8, would have been 188 - 235 months for a career offender, or otherwise, 92-115 months based on his criminal history category of VI. That would have been less than the mandatory 10 years for the conspiracy charge.

History and Characteristics of the Defendant

Dickerson is a 39-year-old man with an 11th grade education and a GED. He began using alcohol and marijuana during high school, and by age 19 was using heroin and powder cocaine weekly. While he eventually stopped using heroin and cocaine (in part because of the Virginia DOC Detention and Diversion programs), he continued to use marijuana daily until his arrest for the current offense, and acknowledges that he has a long-term addiction to this drug, for which he needs intensive treatment.

Dickerson also has other health issues. At 345 pounds, he is medically obese and suffers from related health conditions, including high blood pressure and borderline diabetes. He suffered gunshot wounds to his leg at age 18 and to his back at age 21, and still has a bullet lodged in his right side from the latter shooting. In 2008, he underwent two surgeries to treat a testicular hydrocele.

He has a lengthy criminal record starting at age 17, but mostly for driving offenses, marijuana possession, repeated petty larcenies, and theft/forgery offenses. He also has a conviction for *accommodation* distribution of cocaine in 1992, at age 21, and a conviction for possession with intent to distribute marijuana (less than 3 pounds) in 1999, at age 28. Up until that time, he had been in trouble several times each year, except for periods of incarceration. He served a total of 3 years for the accommodation distribution (including probation violation sentence) and 16 months for the marijuana possession with intent, plus completing the detention and diversion programs. He was released from his last prison sentence in 2004, and thereafter, until his arrest on this indictment in 2010, had only a single criminal charge, a misdemeanor driving offense in 2006.

After his release from prison in 2004, Dickerson maintained employment, his last employer being Orvis in Roanoke. He had to quit that job in 2008 because of his hospitalization for surgery. He then started his own home-improvement business and applied for a contractor's license in 2008. Because of the economy, he was only able to earn a profit of $6000 - $8000 between October 2008 and the time of his arrest in early 2010. His employment history between 2004 and 2010 reveal his willingness and ability to work for a living.

Purposes of Sentencing

The purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) can be summarized as retribution, general deterrence, incapacitation, and rehabilitation. A sentence of 10 years accomplishes each of these purposes. For the reasons discussed below, a higher sentence, particularly one in the "career offender" guideline range, does not promote any of these purposes.

*Retribution*

While drug trafficking is a serious crime, the mandatory minimum sentence of 10 years is a serious sentence. Congress intended this penalty to reach primarily drug manufacturers and kingpins, but in practice, it sweeps in all levels of offenders, treating smaller dealers as harshly as larger dealers. U. S. Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentence Reform* (2004) at 48, 134. Dickerson was a middleman, obtaining the heroin from someone who obtained it from someone else. He did not manufacture the heroin, nor did he import it into the country. Under the circumstances, many would consider ten years to be even higher than necessary to reflect the seriousness of the crime and provide just punishment. An overwhelming majority of Federal Judges surveyed in 2002 (73.7% of District Court Judges and 82.7% of Circuit Court Judges) believed that the mandatory drug trafficking sentences are greater than necessary to reflect the seriousness of the offenses. Id. at 52.

Judicial attitudes reflect a belief that career offender guidelines are particularly excessive. In the first year post-Booker, 74.3% of downward departures and 73.1% of downward variances occurred in drug-trafficking career offender cases!  U.S.S.C., Final Report on the Impact of United States v. Booker on Federal Sentencing, 138 (March 2006), available at http://www.ussc.gov/booker_report/Booker_Report.pdf.  Further, less than half of career offender drug trafficking cases (40.5%) were sentenced within the guidelines.  Id.

Public opinion is also against the severity of federal drug trafficking sentences.  In one national public opinion survey commissioned by the Sentencing Commission, a random probability sample of respondents recommended median sentences for trafficking in heroin and cocaine that *"topped out"* at about 12 years even for defendants with 4 prior prison sentences. Peter H. Rossi & Richard A. Berk, U. S. Sentencing Commision, Public Opinion on Sentencing Federal Crimes, Executive Summary (1997), http://www.ussc.gov/nss/jp_exsum.htm. Although respondents recommended longer sentences for those with longer prior records, the length of sentence increases were nowhere near those reflected in career offender guidelines.  Id.

In fashioning a sentence that reflects the seriousness of the crime and provides just punishment for the crime, the Court is also to impose a sentence that promotes respect for the law.  When the general public views sentences as too harsh, that does not promote respect for the law.  When the law as applied has disparate impact on racial minorities, that does not promote respect for the law, either.  Fifty-eight percent of drug-trafficking career offenders are African American, much higher than their percentage of the total population, and higher than the 26% of general offenders who are African American.  U.S.S.C., Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, 133-134 (November 2004).  African Americans are at higher risk of arrest

and prosecution for repeat drug trafficking offenses because of open-air drug markets and higher law-enforcement presence in urban minority neighborhoods.  Id.  Having recognized the disparate impact on minority defendants, such as Mr. Dickerson, the Sentencing Commission itself has stated, "The federal criminal justice system must be both fair *and perceived to be fair*."  Id.  For purposes of retribution, the high sentence proposed by the Sentencing Guidelines for Mr. Dickerson is not fair, nor would it be perceived as far by the majority of our citizenry.

*Deterrence/Incapacitation*

The Commission itself has recognized that lengthy incarceration of a drug dealer does not protect society from the harms of illegal drugs:  "[R]etail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high.  Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else."  Id. at 134.  Thus, members of the public are not protected by incapacitation of the individual dealer, and other dealers are not deterred by the lengthy incarceration of another dealer.  The present case appears to bear that out; when co-defendant White could no longer get heroin from Broady, he turned to Dickerson as a replacement.  That there continue to be drug prosecutions every day is further evidence of incarceration's ineffectiveness at preventing continued drug sales.

As for specific deterrence of the individual offender, the Commission acknowledges that recidivism rates of those who are career offenders because of prior drug convictions are "much lower than other offenders who are assigned to Category VI."  In fact, only 27% of offenders classified as career offenders because of drug convictions will recidivate, compared to 55% of other criminals in Category VI.  Id.

Further, recidivism decreases with age. U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, 12 (2004)  Dickerson is now 39 years old; the minimum sentence of 10 years will place him in his late 40s at the time of his release. Coupled with the nearly 5 years he remained out of trouble when released from prison in 2004, it is reasonable to suggest that a 10 year sentence, substantially longer than any he has ever served (and longer than his other sentences combined), is enough to deter Dickerson from further crimes.

*Rehabilitation*

During 10 years of incarceration, Dickerson should have ample time to complete the 18-month intensive drug treatment program, if the Bureau of Prisons makes it available to him. Beyond that, Congress has legislatively acknowledged "the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating a defendant." 28 U.S.C. § 944(k).

The Sentencing Guidelines

While the Court must give "respectful consideration to the Guidelines," and proper calculation of the guidelines is the "starting point and the initial benchmark" of the sentencing determination, those guidelines are just one of the factors in an array of factors warranting consideration by the Court.  Kimbrough v. United States, 552 U.S. 85,91, 109.  When a guideline sentence is "greater than necessary" to serve the objectives of sentencing, the Court must follow Congress' mandate to impose a sentence "sufficient but not greater than necessary" to accomplish the purposes of punishment. Id. at 91.  As discussed in the prior subsection, the guidelines in the present case recommend a sentence far greater than necessary to accomplish any of the purposes of punishment.

In addition to their failure to promote the purposes of punishment in this case, there are other reasons for the Court to disregard the "career offender" classification in this case. First, the Guidelines in drug cases and in career offender cases were not derived from "empirical data and national experience" and thus do not reflect any anlysis of policy considerations or whether these guidelines actually promote the goals of punishment. Id. at 109. The Court is free to disagree with policies upon which the Guidlines are based, if persuaded that the policies do not serve the purposes of punishment. Id. at 101. Where there is no Commission policy underlying the Guideline, as in career offender and drug trafficking guidelines, there is nothing for the Court to disagree with. Rather, the Court must perform its own analysis of the 3553(a) factors. Id. at 110. As already argued, these factors favor a sentence much lower than the Guideline range.

Second, in creating the "career offender" guidelines, the Commission defined "career offender" in a much broader way than Congress defined the term. Congress directed the Sentencing Commission to assure a sentence at or near the maximum term authorized for certain defendants, who are now referred to as career offenders. As relevant to this case, such an individual must be 18 or older, "convicted of an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)" and previously convicted of two or more prior felonies, each of which is "an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)." 28 U.S.C. § 994(h). *Neither attempted possession with intent to distribute, nor conspiracy to distribute*, is described in the relevant statute. United States v. Price, 990 F.2d 1367 (D.D.C. 1993); United States v. Bellazerius, 24 F.3d 698, 700-702 (5th Cir. 1994). The Fourth Circuit has also acknowledged that attempt and possession were not part of the Congressional definition of crimes that constituted career offender crimes or predicates, but noted the Commission's implicit authority to expand the definition under general authority giving

the Commission "significant discretion in formulating guidelines" under 28 U.S.C. § 994(a). United States v. Kennedy, 32 F.3d 876, 888-889 (4th Cir. 1994). While the Guideline may be appropriately promulgated, the Court is free to reject the Commission's expansion of crimes subject to "career offender" status, especially if the career offender guidelines do not promote the purposes of punishment in this case. Neither count to which Dickerson has pled guilty-- conspiracy nor attempt-- falls within the strict language of Congress' description of career offender crimes, and accordingly, counsel urges this Court to disregard the career offender designation for purposes of sentencing Mr. Dickerson.

Another problem with the career offender Guideline is that it effectively "double counts" a defendant's criminal history. Not only does he have a criminal history category of VI, based on his prior record, but the adjusted offense level is raised from 29 to 34, not based on the nature of the crime, but based on the criminal history. This presents a fairness issue that is not justified by any of the goals of punishment. If Dickerson were not considered a "career offender," then his guideline range for the offense, conspiracy to possess with intent to distribute more than 1000 grams of heroin, at criminal history category VI, would be 151 - 188 months. That range takes into account his criminal history (including both prior drug cases) and the severity of the current offense. The "career offender" guideline range of 262 - 327 months is a drastic increase above the range normally considered appropriate for this crime, even by someone with his criminal history. The purposes of punishment do not justify such a draconian increase.

Yet another reason to reject the career offender guidelines in this case is that Dickerson's predicate drug offenses are remote in time and less serious than most types of drug trafficking offenses. The Sentencing Commission's definition of a qualifying drug trafficking conviction is so broad that it dumps Dickerson's 1992 accomodation distribution conviction (small distribution

amount to a friend for no profit) into the same category as a major drug kingpin selling multiple kilograms of drugs. See United States v. Moreland, 568 F. Supp. 2d 674, 686-687 (S.D. W. Va. 2008). Likewise, the 1999 possession with intent to distribute less than 3 pounds of marijuana (just over 1.2 kilograms) is an offense for which the maximum punishment under 21 U.S.C. § 841(b)(D) would be 5 years, not the 20 or 40 years that would apply to the distribution of the harder drugs. Because his only prior drug convictions much less serious than the typical "career offender" predicate offenses (and admittedly less serious than the current offense), Dickerson urges the Court not to follow the career offender guidelines.

Avoiding Unwarranted Sentencing Disparity

As previously discussed, even the Sentencing Commission has acknowledged that the career offender guidelines have a disparate impact on racial minorities, such as Mr. Dickerson. U.S.S.C., Fifteen Year Study, supra, at 133-134. Disparity caused by the socio-economic factors of race and urban poverty is an unwarranted disparity of the kind which guidelines are supposed to reduce, not enhance.

Of course, not all disparity is unwarranted. Disparity based on the nature of the offense, the nature of one's criminal history, and the prospects for successful rehabilitation is appropriate. As discussed in the prior section, Dickerson's predicate drug offenses, accommodation distribution of cocaine and possession with intent to distribute marijuana, are much less serious than the typical career offender predicate offenses. A lower sentence for Dickerson based on that difference is not unwarranted disparity, but proper tailoring of the sentence to accomplish the goals of punishment in this individual case.

## Conclusion

Dickerson is a 39-year-old man with long-term addiction to marijuana and a history of more serious drug use. He desires and would benefit from the intensive drug treatment program.

From his youth (17 to early 30s), he has a long record of non-violent criminal activity, involving theft, forgery, drugs, and driving offenses.  After release from prison in 2004, however, Dickerson obtained a job and stopped being a regular fixture in the criminal justice system.  Although he fell to the temptation of the money that drug trafficking could provide, when he was caught, he immediately accepted full responsibility and was cooperative with the government to an unprecedented extent.  He has good potential for rehabilitation.

He is also severely overweight, with high blood pressure, borderline diabetes, and other health problems, which realistically, will shorten his life expectancy.  Even with the mandatory minimum sentence of ten years, he will be in his late 40s by the time he gets out of prison.

The guidelines in this case do not promote the goals of just punishment, respect for the law, or deterrence.  The Sentencing Commission's own studies demonstrate this.  Neither judicial nor public opinion favors lengthy sentences of the kind imposed under the career offender guidelines.  The national opinion survey commissioned by the Commission and discussed earlier noted that the median top sentence recommended by ordinary citizens for serious drug traffickers, even with 4 prior terms of imprisonment, was around 12 years.  Ironically, that is just under where the low end of the guidelines would be, if the Court exercises its discretion to sentence Dickerson without considering the career offender designation.

                                              KEVIN NEVOYLE DICKERSON

                                              By /s  Fay F. Spence

Fay F. Spence, Esq., Va. Bar #27906
First Assistant Federal Public Defender
210 First St., SW, Suite 400
Roanoke, VA 24011
(540) 777-0880
(540) 777-0890 (facsimile)

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of August, 2010, I electronically filed the foregoing Sentencing Memorandum with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to Donald Wolthuis, Assistant United States Attorney, counsel for the United States.

/s  Fay F. Spence